Freyer, Hyman & Jarmulowsky (Adolph Freyer and Maurice Hyman, of counsel), for appellants.

Crane & Baer (S. Clinton Baer, of counsel), for respondent.

---

ST. LOUIS & S. F. R. CO. v. GUARANTY TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   May 12, 1911.)

RAILROADS (§ 170*)—MORTGAGES—CONSTRUCTION—"REQUIRED."

A railroad mortgage to secure an issue of refunding bonds providing for the reservation of a certain portion of the refunding bonds, or such less amount thereof as might be necessary for the purpose, to take up at maturity or before maturity, certain underlying bonds enumerated, and providing for the release of the reserved bonds for use in the construction of improvements in connection with the railroads when they should not be required for the retirement of the underlying bonds, did not authorize the release of the refunding bonds to an amount equal to the face value of the underlying bonds maturing after the date of maturity of the refunding bonds which the railroad company after reasonable effort was unable to retire and replace with the refunding bonds; such failure being insufficient to show that the refunding bonds are no longer "required" for that purpose.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 170.*

For other definitions, see Words and Phrases, vol. 7, pp. 6122–6125.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

Submission of controversy on agreed statement of facts between the St. Louis & San Francisco Railroad Company, plaintiff, and the Guaranty Trust Company of New York, defendant. Judgment for defendant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

O'Brien, Boardman & Platt (Morgan J. O'Brien, of counsel, and John W. Dixon, on the brief), for plaintiff.

Arthur H. Van Brunt (Adrain H. Joline, of counsel, and Lewis H. Freedman, on the brief), for defendant.

CLARKE, J. Plaintiff is a Missouri corporation owning and engaged in the operation of lines of railroad and other properties, franchises, and rights in the states of Missouri, Kansas, Oklahoma, Arkansas, Alabama, Mississippi, Tennessee, and other states. Defendant is a New York corporation and the successor as corporate trustee to the Morton Trust Company.

Plaintiff made, executed, and delivered to the Morton Trust Company and William H. Thompson, as its trustees, a refunding mortgage dated June 20, 1901, upon its railroads and railroad property, franchises, and rights, to secure an issue of $85,000,000 of its refunding bonds bearing interest at the rate of 4 per cent. per annum. Sixty-seven million, seven hundred and nineteen thousand dollars of the refunding bonds have been issued under said mortgage. All the refunding bonds are to mature July 1, 1951.

The mortgage provided:

"Second. The Trust Company shall certify the refunding bonds and deliver the same as follows: A. $51,574,000 of the refunding bonds, or such less amount thereof as shall be necessary for that purpose, shall be reserved to be issued and delivered in exchange for or to take up at maturity or before maturity the following bonds (which are hereafter called collectively the underlying bonds), with all unmatured and unpaid coupons belonging thereto."

Fourteen classes of bonds issued by various companies with the amounts thereof, and terms thereof and when payable, were enumerated:

"Whenever the railroad company shall tender or cause to be tendered to the trust company, and whether before or after the maturity thereof or the payment thereof, any of the underlying bonds with all the unmatured coupons thereunto belonging, the trust company shall, in exchange therefor, certify and deliver to the railroad company, or to its order, refunding bonds of a face amount equal to the face amount of the underlying bonds so received by the trust company. * * * Any refunding bonds which shall no longer be required to be reserved for issue and delivery in exchange for or to take up at or before maturity the underlying bonds in accordance with the preceding provisions of this subdivision, may, after all the refunding bonds reserved under the following subdivision C of this article shall have been issued or have been set apart, be certified, issued and delivered in accordance with the provisions of said subdivision C and in addition to the bonds reserved for issue under said subdivision.

"B. $10,926,000 of the refunding bonds, or such less amount thereof, as in the judgment of the railroad company, shall be required for that purpose, shall be certified and delivered to the railroad company for use, in its discretion, in the refunding of the underlying bonds, on the delivery to the trust company from time to time of a certified copy of a resolution of the board of

directors of the railroad company or of the executive committee of said board, requesting such delivery and stating that the bonds so delivered or their proceeds will be used by the railroad company only for the purposes of such refunding. Any refunding bonds which after all the refunding bonds reserved under the following subdivision C of this article shall have been issued or have been set apart, shall not have been used for refunding the aforesaid indebtedness, or in the judgment of the board of directors of the railroad company, to be expressed by resolution of such board, shall no longer be required to be reserved for use for such purpose, may be certified, issued and delivered in accordance with the provisions of said subdivision C.

"C. The residue of the refunding bonds shall be certified and delivered and used only for the following purposes or some one or more of them, namely: The construction or acquisition of additional side tracks, second-tracks, spur-tracks, terminals or other additions to or betterments of, or improvement upon, along or appurtenant to the lines of railroad, terminals or other properties which shall then belong to the railroad company and be subject to the lien of this indenture, or which shall then belong to any of the companies the line of which shall be then operated as part of the system of the railroad company, or which shall then belong to any other company of whose capital stock at least two-thirds in amount shall then belong to the railroad company, or be held in trust for it, and be pledged or assigned to the trustees hereunder or to the trustee under any mortgage or deed of trust securing any of the underlying bonds; * * * the construction or acquisition of terminals, branches or extensions of any of such lines of railroad, or the acquisition of the capital stock and bonds and other indebtedness of any corporation owning any such terminal, branch or extension, provided two-thirds of the capital stock of such corporation shall have been obtained or shall be thereby obtained; the acquisition of additional lines of railroad or the acquisition of the capital stock and bonds and other indebtedness of any corporation owning additional lines of railroad, provided two-thirds of the stock of such corporation shall have been obtained or shall be thereby obtained; the construction or acquisition by the railroad company of additional rolling stock (in which term, as used in this indenture, locomotives or other motive power shall be deemed included) which shall be made subject to the lien of this indenture; and to reimburse the railroad company for any expenditures made by it for the purposes aforesaid, or some one or more of them. * * * The refunding bonds reserved under this subdivision 'shall be certified and delivered by the trust company, from time to time, only upon the delivery to the trust company of a copy of a resolution of the board of directors of the railroad company, certified under its corporate seal by the secretary or assistant secretary, calling for the certification and delivery of such bonds, and stating that such bonds or their proceeds will be set aside, separate and apart from all other assets and funds of the railroad company, and will be used only for the purposes authorized by this subdivision."

Among the underlying bonds enumerated in paragraph A of the second section of the mortgage there were $1,099,000 in amount of 5 per cent. bonds of the St. Louis & San Francisco Railway Company, payable October 1, 1987, being 36 years after the date of maturity of the refunding bonds secured by trust indenture with the Union Trust Company of New York, dated December 15, 1887; and $7,831,000 in amount of 4 per cent. bonds of the St. Louis & San Francisco Railway Company, secured by its consolidated mortgage dated July 1, 1896, payable July 1, 1996, being 45 years after the date of the maturity of the refunding bonds.

All the other underlying bonds mentioned in subdivision A were by their terms to mature before the date of maturity of the refunding bonds. There are no provisions in either of the indentures under which the said 5 per cent. bonds or the said consolidated mortgage bonds were issued whereby they could be called for redemption or be

retired before the dates of their respective maturities by operation of sinking fund provisions or otherwise. Of the $51,575,000 of the underlying bonds mentioned in the refunding mortgage, the plaintiff has succeeded in retiring $38,470,000, including $660,000 of the 5 per cent. bonds and $6,273,000 of the consolidated bonds, leaving unexchanged $439,000 of the 5 per cent. bonds and $1,558,000 of the consolidated mortgage bonds, or a total amount of $1,997,000 of underlying bonds which will mature many years after the maturity of the refunding bonds, and $11,107,000 of underlying bonds, which will mature prior to the maturity of the refunding bonds. There are reserved and still held $11,107,000 of the refunding bonds to retire the equal amount of underlying bonds which will mature prior to the maturity of the refunding bonds, and plaintiff admits the necessity of holding them for that purpose.

The plaintiff desires to have said $1,997,000 of refunding bonds held freed from the limitations of subdivision A, and subject to certification and delivery under the provisions of said subdivision C, so that said bonds may be available to provide for the cost of additional rolling stock which the company needs. Through its board of directors it adopted proper resolutions setting out the facts and requesting the defendant to hold said $1,997,000 of refunding bonds freed from the limitations of subdivision A, to be hereafter certified and delivered under the provisions of subdivision C, and also authorizing the execution, tender, and delivery to the defendant of an agreement forfeiting and waiving the right of plaintiff to tender to the defendant any of said 5 per cent. bonds or any of said consolidated mortgage bonds in exchange for refunding bonds.

Pursuant to said resolutions of its board, plaintiff made such request in writing upon the defendant, accompanied by a proper certified copy of said resolutions and also tendered to defendant an executed agreement in accordance with the above resolutions. Defendant refused to comply with the request, and claims that the plaintiff can only use said $1,997,000 of refunding bonds for refunding purposes, and is not entitled to have them held freed from the limitations of subdivision A, or hereafter certified and delivered under subdivision C. Whereupon said controversy between the parties was submitted to this court upon an agreed statement of facts, pursuant to the provisions of sections 1279, 1280, and 1281 of the Code of Civil Procedure.

It seems to us that the primary purpose of this refunding mortgage, emphasized by its title, was to provide for and secure the refunding of all the numerous issues of outstanding and underlying bonds so carefully enumerated in the mortgage itself, and for which purpose $51,574,000 of the refunding bonds or such less amount thereof as shall be necessary for that purpose shall be reserved to be issued and delivered in exchange for or to take up at maturity or before maturity.

The plaintiff and the draughtsmen of the mortgage knew as well at the time of the execution thereof as now that the so-called 5 per cent. bonds and the consolidated mortgage bonds matured many years after the time fixed for the maturity of the refunding bonds. Nevertheless they were included in the schedule and covered by the words,

"At maturity or before maturity." Reading the whole mortgage, we are of the opinion that the fixing of the definite sum of the refunding bonds, to be reserved, and the precise enumeration of the underlying bonds for which said amount of refunding bonds should be reserved, establish that the proper interpretation of the phrase, "any refunding bonds which shall no longer be required to be reserved for issue and delivery in exchange for or to take up at or before maturity the underlying bonds in accordance with the provisions of the preceding subdivision," is that there were required to be reserved sufficient of the refunding bonds to take up all of the existing and outstanding underlying bonds enumerated, and, until they were so taken up, the amount necessary for that purpose could not be released from the express limitations of the mortgage and devoted to other purposes.

If the board of directors of the plaintiff had the discretion to determine how many of the refunding bonds were required to dispose of the underlying bonds, the carefully elaborated scheme for the retirement thereof could have been disposed of at any time, and purchasers of the refunding bonds, depending solely for their information in regard thereto upon the terms of the mortgage, and supposing therefrom that they were receiving a high grade of security, with the preceding and underlying bonds out of the way, might have found themselves possessed of bonds subsequent and subordinate to 14 prior issues.

Nor does the fact that the plaintiff has not yet by the efforts which it characterizes as reasonable succeeded in getting in these $1,997,000 of outstanding underlying bonds persuade us that the equivalent amount of refunding bonds are no longer "required" for that purpose.

We think that the fair interpretation of this mortgage compels us to hold that the $1,997,000 of the refunding bonds, the subject of this controversy, are required to be still held by the trustee, and cannot be removed from the restrictions of the mortgage and applied for the general uses of the road as provided in subdivision C, because they have not ceased to be required to be reserved for issue and delivery in exchange for or to take up at or before maturity underlying bonds in accordance with the earlier provisions of the mortgage.

It follows that, in accordance with the terms of the submission, plaintiff's prayer for judgment should be denied and judgment go for the defendant, without costs to either party. All concur.